IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **AMY LEIGH GOBER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | 2:21-cv-01000-LSC |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner,** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OF OPINION**

## I.     Introduction

The plaintiff, Amy Leigh Gober ("Gober" or "Plaintiff"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI"). (Doc. 14.) Gober timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.    Background

Gober was forty-three years old at the time of her application for SSI. (Tr. at 240.) Gober has an eleventh-grade education and has previously worked as a store clerk and cashier, construction-site cleaner, and fast-food worker. (Tr. at 434, 450-

54.) Gober's application for benefits alleged a disability onset date of January 1, 2012, which she later amended to April 21, 2015. (Tr. at 862.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the claimant is engaged in substantial gainful activity ("SGA"). *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the claimant's medically determinable physical and mental impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *Id.* The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that the claimant was not disabled).

Similarly, the third step requires the evaluator to consider whether the claimant's impairment or combination of impairments meets or is medically equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. *Id*.

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the claimant has the RFC to perform the requirements of her past relevant work. *See id*. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant's impairment or combination of impairments does not prevent her from performing her past relevant work, the evaluator will make a finding of not disabled. *Id*.

The fifth and final step requires the evaluator to consider the claimant's RFC, age, education, and work experience in order to determine whether the claimant can make an adjustment to other work. *Id*. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can perform other work, the evaluator will find her not disabled. *Id*.; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the claimant cannot perform other work, the evaluator will find her disabled. 20 C.F.R. §§ 404.1520(a)(4)(v),

404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the Administrative Law Judge ("ALJ") first established that Plaintiff has not engaged in SGA since her alleged disability onset date. (Tr. at 167.) Next, the ALJ found that Plaintiff's obesity, chronic obstructive pulmonary disease ("COPD"), lumber spondylosis with lumber disc bulge, and anxiety qualified as "severe impairments." (Tr. at 168.) However, the ALJ also found that these impairments neither met nor medically equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 174.) Following this determination, the ALJ established that Plaintiff has the following RFC:

> [T]o perform light work as defined in 20 C.F.R § 416.967(b) except she cannot kneel, crouch, crawl, or climb ladders, ropes, or scaffolds; but can occasionally operate foot controls. She should avoid concentrated exposure to extreme cold, extreme heat, extreme humidity, and pulmonary irritants, such as fumes, odors, dusts, gases, poorly ventilated areas, and chemicals, and all exposure to unprotected heights, hazardous machinery and excessive vibration. She can perform unskilled work with the ability to attend and concentrate for 2-hour periods; manage occasional workplace changes; make simple work-related decisions; and perform work that is goal oriented, but not at an assembly line or production pace. Work can be around co-workers throughout the day, but with only occasional interaction with co-workers, and no more than occasional direct interaction with the general public.

(Tr. at 179.)

According to the ALJ, Plaintiff has no past relevant work and has a limited education as those terms are defined by the regulations. (Tr. at 184.) The ALJ also

established that Plaintiff was a "younger individual age 18-49" at forty-three years old on the date her application was filed. (*Id.*) Further, the ALJ found that the "transferability of job skills is not an issue because the claimant does not have past relevant work." (*Id.*)

In determining whether a successful adjustment to other work can be made, the ALJ considered the claimant's RFC, age, education, and work experience in conjunction with the Medical Vocational Guidelines, 20 C.F.R Part 404, Subpart P, Appendix 2. (Tr. at 185.) If the claimant had the RFC to perform the full range of light work, a finding of "not disabled" would be directed by Medical Vocational Rule 202.17. (*Id.*) However, the claimant's ability to perform all or substantially all of the requirements of this level of work had been impeded by additional limitations. (*Id.*) To determine the extent to which these limitations eroded the unskilled light occupational base, the ALJ enlisted a vocational expert ("VE") and used Medical-Vocation Rules as a guideline to find that there were a significant number of jobs in the national economy that Plaintiff was capable of performing, such as general office clerk, food preparation, and mail room clerk. (*Id.*) From these findings, the ALJ concluded the five-step evaluation process by stating that Plaintiff "ha[d] not been under a disability, as defined in the Social Security Act, from April 21, 2015," Plaintiff's alleged disability onset date, through September 22, 2020, the date of the ALJ's decision. (Tr. at 186.)

### III.  Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is

supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Failure to apply the correct legal standards may be grounds for reversal. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1989)). However, an error by the ALJ which does not affect the ultimate findings of the decision is a harmless error, and the ALJ's decision will stand. *See Diorio v. Heckler,* 721 F.2d 726, 728 (11th Cir.1983).

## IV. Discussion

Plaintiff argues that the ALJ's decision should be reversed and remanded, alleging that the ALJ failed to consider the medical opinions of Dr. Christine Whiten. (Doc. 14 at 4-7.) For the reasons detailed below, this argument is without merit.

### A. The Proper Standard for Evaluating Medical Opinions

For claims filed on or after March 27, 2017, 20 C.F.R. § 404.1520c applies, which requires the ALJ to articulate how persuasive they find the medical opinions and all of the prior administrative medical findings in the case record. 20 C.F.R. § 404.1520c. The ALJ in the present case consistently described the medical

opinions of Plaintiff's medical providers as "persuasive" or "not persuasive," appearing to apply these revised standards. (Tr. at 178.) Because Gober filed her claim before March 27, 2017, the ALJ applied the wrong standard. For claims filed before March 27, 2017, the rules set forth in 20 C.F.R. § 404.1527 apply, which require the ALJ to articulate the weight given to different medical opinions in the record and the reasons therefore. 20 C.F.R. § 404.1527; *see also Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The weight afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Because Plaintiff's claim for Social Security benefits was filed on April 21, 2015, the rules provided in 20 C.F.R. § 404.1527 applied to her case. (Tr. at 401.)

Within the classification of acceptable medical sources are the following different types of sources that are entitled to different weights of opinion: 1) a treating source, or a primary physician, which is defined in the regulations as "your physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2) a non-treating source, or a consulting

physician, which is defined as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you;" and 3) a non-examining source, which is "a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . . ." 20 C.F.R. § 404.1502.

The regulations and case law set forth a general preference for treating medical sources' opinions over those of non-treating medical sources, and non-treating medical sources over non-examining medical sources. *See* 20 C.F.R. § 404.1527(c)[1]; *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). Thus, a treating physician's opinion is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford*, 363 F.3d at 1159 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). "Good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also*

---

[1] The treating physician rule has since been rescinded. However, it applies in this case because it was originally filed in 2015, with the new regulations only taking effect for cases filed after March 27, 2017. *See* Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 2017 WL 3928298 (Mar. 27, 2017).

*Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

On the other hand, the opinions of a one-time examiner or of a non-examining source are not entitled to the initial deference afforded to a physician who has an ongoing treating relationship with a plaintiff. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). While the ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion," the ALJ is still "required to state with particularity the weight he gives to different medical opinions and the reasons why." *McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006) (*citing Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)). However, an ALJ's failure to explicitly assign weight to an examining physician's opinion, when that opinion is contradicted by other the evidence of record and ultimately does not affect the result of the ALJ's findings, is harmless error. *See Tillman v. Comm'r, Soc. Sec. Admin.*, 559 F. App'x 975, 976 (11th Cir. 2014) (holding that it was "clear that substantial evidence supported the ALJ's decision to discount the opinions of [the examining physician], which spoke to matters ultimately reserved to the Commissioner, were conclusory and based on limited underlying relationships with [the claimant], and were contradicted by other evidence in the record.")

The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's RFC. *See, e.g.*, 20 C.F.R. § 404.1546(c).

**B.     Merits**

Though the ALJ failed to state with particularity the weight assigned to Dr. Whiten's medical opinions, this error was harmless as the ALJ properly considered these opinions and sufficiently explained why Dr. Whiten's medical opinions, after a one-time examination of Plaintiff, were inconsistent with Plaintiff's longitudinal treatment record.

First, Dr. Whiten was not a treating physician, but rather was Plaintiff's examining physician. (Tr. at 171, 857-69.) As such, Dr. Whiten's opinion is not entitled to the deference given to that of a treating physician. *McSwain,* 814 F.2d at

619. Plaintiff contends that Dr. Whiten should be considered a "treating source" because Dr. Whiten was a medical provider at Cahaba Medical Foundation ("Cahaba"), where Plaintiff received primary care treatment. (Doc. 14 at 6-7.) However, Dr. Whiten's status as a medical provider at Cahaba is not sufficient to qualify her as Plaintiff's treating source.

Plaintiff's medicals record indicate that Dr. Whiten did not personally treat Plaintiff at Cahaba for Plaintiff's primary care, nor had an ongoing treatment relationship with the Plaintiff. (Tr. at 649-751, 752-856, 870-932, 1099-1148.) Dr. Whiten merely conducted a "disability examination" on March 15, 2019, at the request of Plaintiff's representative. *Id.*; (Tr. at 171, 178, 1136-37.) Accordingly, Dr. Whiten did not have the requisite relationship with the plaintiff to be considered a treating source. *See Nyberg v. Comm'r of Soc. Sec.,* 179 F. App'x 589, 591 n.3 (11th Cir. 2006) (holding that "[a] 'treating source' (i.e., a treating physician) is a claimant's 'own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.'" (*quoting* 20 C.F.R. § 404.1502)); *see also Chatham v. Comm'r of Soc. Sec.*, 764 F. App'x 864, 867-68 (11th Cir. 2019) (noting that the doctor in question examined the claimant only once and so was not a treating physician); *McSwain v. Bowen,* 814 F.2d 617, 619 (11th Cir. 1987) (holding that an ALJ is not required to give deference to the opinion of a

one-time examining medical source and it may be properly discounted if it is not supported by clinical evidence).

Furthermore, the ALJ properly considered the medical opinions of Dr. Whiten and substantial evidence supports the ALJ's decision to discount these opinions because they were inconsistent with Plaintiff's longitudinal treatment record. (Tr. at 171, 176, 178.) An ALJ may discount the opinion of a one-time examining physician when it is contrary to the patient's overall treatment record. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155 (11th Cir. 2004); *see also Wainwright v. Comm'r of Soc. Sec.*, No. 06-15638, 2007 WL 708971 (11th Cir. Mar. 9, 2007) (holding that the ALJ was entitled to reject the examining source's opinion who had treated the claimant only once because the opinion was not entitled to any special weight as it was not from a treating physician, and was contradicted by other medical evidence); *McNamee v. Soc. Sec. Admin.*, 164 F. App'x 919, 923-24 (11th Cir. 2006) (holding that: (1) a doctor who had only examined the claimant once for the purpose of a consultative exam was not a treating physician; (2) the ALJ had not erred in weighing another doctor's opinion more heavily than the consultative doctor's opinion because the ALJ had adequate, additional evidence upon which to make a determination; and (3) the ALJ provided specific reasons for according no weight to the consulting doctor's opinion, which were based upon substantial medical evidence).

Here, Dr. Whiten examined Plaintiff on March 15, 2019, to complete her paperwork for disability. (Tr. at 1137.) Dr. Whiten noted that Plaintiff displayed an irregular gait and ambulated with a cane and walker. (Tr. at 1141.) Dr. Whiten further indicated that Plaintiff displayed a limited range of motion in her spine, hips, and knees and reduced motor strength in her right upper extremity, though her muscle tone was normal. (*Id.*) The ALJ sufficiently discussed Dr. Whiten's findings and contrasted them with the findings of Plaintiff's primary care provider, Dr. Jeremy Crider. (Tr. at 171.)

Dr. Crider treated Plaintiff on January 8, February 14, and March 7, 2019; the March visit coming just eight days prior to the examination by Dr. Whiten. (Tr. at 171, 760-61, 764-65, 768-70.) In all of these visits, Dr. Crider indicated that Plaintiff was healthy appearing, well-nourished, well-developed, and in no apparent distress. (*Id.*) Dr. Crider observed that Plaintiff was ambulating normally, had no dyspnea, had normal movement in all of her extremities, and that Plaintiff had young children, and stayed "fairly active" with them. (*Id.*)

In addition, the ALJ properly considered Dr. Whiten's mental health opinion. (Tr. at 176, 178.) The ALJ discussed Dr. Whiten's opinion from the March 15, 2019, examination which indicated that Plaintiff had extreme restrictive limitations with respect to her mental and social functional abilities. (Tr. at 176, 866-67.) However, the ALJ also noted that Dr. Whiten's treatment records from the examination

reflected that Plaintiff was able to care for herself, that Plaintiff reported no depression, sleep disturbances, anxiety, hallucinations, nor suicidal thoughts. (*Id.*)

Again, the ALJ contrasted Dr. Whiten's findings with the evaluations of Dr. Crider, Plaintiff's primary care provider, as well as numerous other medical professionals who had treated or examined the Plaintiff. (Tr. at 176, 178.) In January, February, and March of 2019, just prior to Dr. Whiten's examination, Dr. Crider had noted that Plaintiff was active, alert, and oriented to time, place, and person; that she had a normal mood and affect; that her recent and remote memory were normal; and that she stayed "fairly active" with her young children. (Tr. at 176, 760-61, 764-65, 768-70.) The ALJ further noted that Dr. Whiten is not a mental health provider and that Dr. Whiten only saw Plaintiff on one occasion at the behest of Plaintiff's attorney. (Tr. at 178.) The ALJ further supported her reasoning to discount Dr. Whiten's opinions to Plaintiff's mental health by articulating the inconsistency of Dr. Whiten's opinion with that of numerous mental health providers that treated the Plaintiff. (Tr. at 176, 178.)

Accordingly, the ALJ properly considered the entire record, including the opinions of Dr. Whiten, and there was substantial evidence to support the ALJ's determination that Dr. Whiten's medical opinions, as a one-time examining physician, were inconsistent with Plaintiff's longitudinal treatment records. Though the ALJ committed error by failing to articulate a particular weight given to Dr.

Whiten's medical opinions as required by the applicable regulations, this error was harmless because it did not affect the ALJ's ultimate determination. *Tillman*, 559 F. App'x at 976. The ALJ described Dr. Whiten's opinions as "not persuasive" and, in contrast, described the opinion of Dr. Crider, and numerous other of Plaintiff's treating physicians, as "persuasive." (Tr. at 178.) These statements indicate that the ALJ was affording greater weight to the opinions of Plaintiff's treating physicians than to Dr. Whiten's opinion as an examining physician, which is in accordance with the standards required by 20 C.F.R. § 404.1527.

While an ALJ's failure to consider the opinions of a medical provider has constituted reversible error in other instances, the case at bar does not meet this threshold. *See Baez v. Comm'r of Soc. Sec.*, 657 F. App'x 864 (11th Cir. 2016). This case can be distinguished from *Baez* where the Eleventh Circuit analyzed an ALJ's decision which had completely failed to discuss the opinions of one of the claimant's examining physicians. *Id.* at 870. Thus, the ALJ's decision suggested that the ALJ failed to consider pertinent elements of an examining physician's medical opinion which may have affected the ALJ's ultimate determination. *Id.* Accordingly, the court concluded that the ALJ had committed reversible error. *Id.*

The plaintiff in *Baez* also alleged that the ALJ had committed reversible error by failing to articulate the weight given to an examining physician. *Id.* at 869. However, the court disagreed, importantly noting that where statements are

sufficient to reflect the particular weight the ALJ assigned to a physician in reaching a final decision, these statements may be sufficient even where the weight assigned is not explicitly stated. *Id*. This is consistent with the rule that "when the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,' [courts] will decline to affirm 'simply because some rationale might have supported the ALJ's conclusion.'" *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011) (*quoting Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir.1984)).

In contrast, here, the ALJ did not fail to discuss Dr. Whiten's opinions. Dr. Whiten's opinions were adequately discussed by the ALJ and contrasted with the findings of Plaintiff's treating physicians. (Tr. at 171, 176, 178.) Furthermore, Dr. Whiten was not a treating physician whose opinion would be entitled to deferential weight. (Tr. at 178.) And though the ALJ describes Dr. Whiten's opinions as "not persuasive," these statements on Dr. Whiten's opinions are sufficient to reflect the particular weight given by the ALJ, which is in accordance with the analysis of the Eleventh Circuit in *Baez*. (Tr. at 178); *Baez*, 657 F. App'x at 869.

The findings described herein support the conclusion that the error of ALJ in the present case was harmless, as it did not affect the ALJ's ultimate findings. The record reflects that the ALJ adequately considered the opinions of Dr. Whiten. (Tr. at 171, 176, 178.) The ALJ contrasted Dr. Whiten's opinions, as an examining physician, with that of Plaintiff's treating physicians which were entitled to greater

weight and were contrary to Dr. Whiten's findings. (*Id.*) The discrepancy between Dr. Whiten's opinions and those of the Plaintiff's treating physicians constitute specific reasons, supported by substantial evidence, to afford less weight to Dr. Whiten's opinion. (Tr. at 171, 176, 178.) Though the ALJ described Dr. Whiten's opinions as "not persuasive," rather than assigning a particular weight, these statements were reflective of the weight given and thus are sufficient. (Tr. at 178.) Thus, the ALJ properly considered the medical opinions of Dr. Whiten and the failure to explicitly state the weight assigned to these opinions did not affect the ultimate determination of the ALJ. Accordingly, the error was harmless and the Commission's decision will not be disturbed.

V.  **Conclusion**

Upon review of the administrative record, and considering Plaintiff's argument, this Court finds the Commissioner's decision is supported by substantial evidence and in accordance with the applicable law. For the foregoing reasons, this Court hereby AFFIRMS the Commissioner's decision. A separate Order consistent with this Opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** on November 6, 2023.

_____
L. Scott Coogler
United States District Judge

215708